**HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF MACON,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 2522.

United States District Court,
M. D. Georgia,
Macon Division.

July 22, 1971.

Cubbedge Snow, Martin, Snow, Grant & Napier, Macon, Ga., for plaintiff.

William J. Schloth, U. S. Atty., Macon, Ga., M. Merkel, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE

BOOTLE, Chief Judge:

This is a suit in two counts under 28 U.S.C.A. § 1346(a) (1) to recover income taxes and interest. Defendant's motion for summary judgment (and this memorandum) relates only to Count One. Under Count One the problem which must be considered and resolved is whether the Commissioner of Internal Revenue properly determined that plaintiff was not entitled to compute the addition to its bad debt reserve as a domestic building and loan association because plaintiff's nonresidential real property loans exceeded 18% of its total assets. This depends upon the propriety of the Commissioner's determination that plaintiff's loans on property used as nursing homes did not constitute loans on residential real property.

For the fiscal year 1967, plaintiff invoked the provisions of Section 593 of the Internal Revenue Code of 1954, (26 U.S.C.A. § 593) dealing with building and loan associations, and elected to set up a bad debt reserve and to take deductions for additions to the reserve in accordance with that section. However, the Commissioner of Internal Revenue, upon examination of plaintiff's return for the year ending June 30, 1967, determined that plaintiff was not entitled to compute its bad debts deduction under Section 593 because plaintiff did not qualify as a domestic building and loan association under the provisions of Section 7701(a) (19) (E), which section prohib-

its an organization from being classified as a building and loan association if the total of its nonresidential real property loans exceed 18% of its total assets. Accordingly, a tax deficiency was assessed against plaintiff for the fiscal year 1967. The deficiency was paid, plus interest, and a claim for refund and timely institution of this action followed.

Section 7701(a) (19) (E) provides in part that "not more than 18 percent of the amount of the total assets (may) * * * consists of assets other than those described in clause (i) of subparagraph (D)". The assets described in Clause (i) of subparagraph (D), here pertinent reads "loans secured by an interest in real property which is [or, from the proceeds of the loan, will become] residential real property * * *[1]." Pursuant to the authority vested in him by Section 7805(a) the Secretary of the Treasury promulgated Treasury Regulation § 301.7701–13 Domestic building and loan associations; subsection (j) (8) which in defining "Residential Real Property" provides that:

> "The term 'residential real property' means real property which consists of one or more family units. A family unit is a building or portion thereof which contains complete living facilities which are to be used on other than a transient basis by only one family consisting of one or more persons. Thus, an apartment which is to be used on other than a transient basis by one family, which contains complete facilities for living, sleeping, eating, cooking, and sanitation constitutes a family unit. Hotels, motels, dormitories, fraternity and sorority houses, rooming houses, hospitals, sanitariums, rest homes, and parks and courts for mobile homes do not normally constitute residential real property."

---

1. Section 7701(a) (19) was extensively revised in 1969 (see discussion *infra*); however, the law as it existed in 1967 is controlling here, and unless otherwise designated all references to § 7701(a) (19) will be to the pre-1969 statute.

Plaintiff, conceding by brief that the nursing homes here in question do not meet the requirements of Reg. 301–7701–13(j) (8)[2], attacks it as being void in that it places too restrictive a definition on the term "residential real property" as used in the Act. In this regard, plaintiff asserts that "a careful reading of the statutory definition [presumably the definition of Section 593] conclusively demonstrates the plain error of the Commissioner's belated definition of residential real property * * *. We believe that it is a fair argument to say that the emphasis the Congress placed on home loans (one to four family units) is indicative that Congress did not intend a strained definition of residential real property loans."

The question in this case thus boils down to one of law—the validity of the Secretary's regulation. The case, therefore, may be appropriately handled by summary judgment.

Section 7805(a) (26 U.S.C.A. § 7805(a)) provides:

"Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue."

■ One attacking a regulation of the Secretary promulgated pursuant to Section 7805(a) has a heavy burden; the presumption of validity weighs heavily. Acker v. Commissioner of Internal Revenue, 258 F.2d 568 (6th Cir. 1958). As stated by the Supreme Court in Commissioner of Int. Rev. v. South Texas Lumber Co., 333 U.S. 496, 501, 503, 68 S.Ct. 695, 698, 700, 92 L.Ed. 831 (1948):

2. "We have no quarrel with the Commissioner's definition as applied to family units, but by what reasoning can it be said that residential real property is limited to a family unit which contains complete facilities for living, sleeping, eating, cooking and sanitation."

"This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons.

\* \* \* \* \* \*

" * * * [I]nterpretations of the Act and regulations under it should not be overruled by the courts unless clearly contrary to the will of Congress. See Burnet v. S. & L. Bldg. Corporation, 288 U.S. 406, 415, 53 S. Ct. 428, 430, 77 L.Ed. 861, 866."

And in United States v. Correll, 389 U.S. 299, 306, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967), the Court pointed out that:

"Improvements might be imagined. But we do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 USC § 7805(a). In this area of limitless factual variations 'it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.' Commissioner [of Internal Revenue] v. Stidger, 386 U.S. 287, 296, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53, 59. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner. Because the rule challenged here has not been shown deficient on that score, the Court of Appeals should have sustained its validity."

"The only reason that the nursing homes involved in this case do not meet the test is that the apartment of the aged does not have cooking facilities, and some of the rooms do not have private bathrooms."

Application of these standards to Treasury Reg. 301–7701–13(j) (8) conclusively establishes that this regulation is a valid exercise by the Secretary of the authority vested in him by Section 7805(a)'s command to prescribe "all needful rules and regulations." This authority extends to the clarification of any ambiguities and uncertainties contained in the Code. Congress did not clarify what it intended when it used the phrase "residential real property". Therefore, it must be presumed that Congress, through its grant of power (§ 7805(a) ) must have intended that the Secretary by appropriate "rules and regulations" provide the necessary clarification for application of this portion of the Code. Careful study of Sections 593 and 7701(a) (19) (E) does not indicate that the Regulation complained of is unreasonable or plainly inconsistent with the statute or in any way contrary to the "intent of Congress", *ergo,* the regulation, being valid, has the force and effect of law. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930).

Both parties to this litigation endeavor to find aid and comfort in the Tax Reform Act of 1969, Pub.L. 91–172, 83 Stat. 487, specifically § 432(c) thereof which changes substantially § 7701(a) (19). Defendant asserts that the subsequent re-enactment by Congress of that portion of Section 7701(a) (19) of the Code dealing with the types of loans to be taken into account in determining whether an organization qualifies as a domestic building and loan association is meaningful as indicating Congressional satisfaction with the Secretary's administrative interpretation. On the other hand, plaintiff asserts that § 432(c) constitutes a "repudiation of the Commissioner's far-fetched definition"; specifically subparagraph (C) (vii) thereof which adds the following categories of investment in which a Savings and Loan Institution can safely invest without losing its eligibility for the bad debt reserve under Section 593:

"(vii) loans secured by an interest in educational, health, or welfare institutions or facilities, including structures designed or used primarily for residential purposes for students, residents, and persons under care, employees, a member of the staff of such institutions or facilities."

The Tax Reform Act of 1969 made rather extensive changes in Section 7701(a) (19). Sections 7701(a) (19) (D) and (E) were omitted, but many of their provisions are now contained in Section 7701(a) (19) (C) (v). Although the percentage of allowable investments was changed, one of the "safe" categories of investments remains "residential real property." Again this term was not defined; however, Section 7701(a) (19) (C) (v) does provide now that "for purposes of this clause, residential real property *shall include* single or multifamily dwellings, facilities in residential developments dedicated to public use or property used on a nonprofit basis for residents, and mobile homes not used on a transient basis." (Emphasis added). The changes in subpart (C) (v) in no way clarified what Congress intended by use of the term "residential real property"; only certain type facilities were specifically included in whatever was encompassed by the term (as defined by Rules and Regulations of the Secretary pursuant to authority vested in him by Section 7805(a)). Subpart (C) (v) did not evidence Congressional disapproval of Treas. Reg. 301.770–13(j) (8).

That portion of the Tax Reform Act specifically pointed out by plaintiff (subpart (C) (vii)) in support of its contention that Congress evidenced its displeasure with said Regulation only adds additional types of "safe" investments, types which were not previously included and which, in large part, would have been excluded by Treas. Reg. 301.7701–13(j) (8). However, by adding these new types of investments it does not appear that Congress intended disapproval of the manner in which Reg. 301.7701–13(j) (8) defined "residential real property". If anything, Congress recognized the validity of the regulation since it

chose to place the new allowable investments in a separate subsection of paragraph 7701(a) (19) (C) rather than including them within that portion of the new Act 7701(a) (19) (C) (v) which specifically included certain areas of investment within the concept of "residential real property", i. e., "residential real property shall include * * *."

While the investments in nursing homes may well be "safe investments" today, they were not in 1967. As heretofore discussed, the Tax Reform Act of 1969 cannot be read as evidencing Congressional disapproval of Treasury Regulation 301.7701–13(j) (8). The Regulations complained of were valid. Accordingly, defendant's motion for summary judgment as to Count One of the Complaint must be and is herewith granted.